ORAL ARGUMENT
REQUESTED

United States District Court
Southern District of New York

336 LLC, d/b/a "The Erotica", et al.,

Plaintiffs,

v.

The City of New York, et al.,

Defendants.

## Bookstore Plaintiffs' Memorandum of Law in Support of Motions for Partial Summary Judgment

Docket No. 1:18-cv-3732-LJL
[Filed Electronically]

[rel. 1:02-cv-4431-LJL]
[rel. 1:02-cv-4432-LJL]
[rel. 1:02-cv-8333-LJL]

**Erica T. Dubno, Esq.**
Fahringer & Dubno
43 West 43rd Street, Suite 261
New York, New York 10036
(212) 319-5351
(212) 319-6657 (fax)
erica.dubno@fahringerlaw.com

Counsel for the Bookstore Plaintiffs

**Table of Contents**

**Introduction** ............................................................................................. **1**

**Facts Related Specifically to Bookstores** .............................................. **2**

**I.    The Bookstore Plaintiffs and Public Will Suffer Irreparable Injury and the Plaintiffs have No Adequate Remedies at Law to Address their Inequitable Treatment** ............................................................. **7**

**II. Any Balancing of the Hardships Weighs Overpoweringly in Favor of Maintaining the Status Quo of Free Expression that has Existed for More than 20 Years, and the Public Interest Will Not be Disserved by a Permanent Injunction** ................................................ **11**

**III. All of the Bookstore Plaintiffs Seek Injunctive Relief** .................................................................................................. **16**

**IV. 60/40 Bookstores Do Not Cause the Types of Problems Which the City Attributed to the 100% Adult Establishments that Formed the Basis for the 1995 Amendments** .................................................................. **19**

**Conclusion** ............................................................................................ **20**

# Table of Authorities

414 Theater Corp. v. Murphy,
    499 F.2d 1155 (2d Cir. 1974).................................................................8, 14

440 East 102nd St. Corp. v. Murdock,
    285 N.Y. 298, 34 N.E.2d 329 (1941)..........................................................14

725 Eatery Corp. v. City of New York,
    408 F.Supp.3d 424 (S.D.N.Y. 2019)........................................................7, 11

754 Orange Ave., Inc. v City of West Haven, Conn.,
    761 F.2d 105 (2d Cir. 1985)........................................................................9

Abie State Bank v. Weaver,
    282 U.S. 765, 51 S. Ct. 252 (1931)......................................................12, 13

Bantam Books, Inc. v. Sullivan,
    372 U.S. 58, 83 S. Ct. 631 (1962)..............................................................14

Bery v. City of New York,
    97 F.3d 689 (2d Cir. 1996)...........................................................................8

City of New York v. Les Hommes,
    94 N.Y.2d 267, 702 N.Y.S.2d 576 (1999) ...................................................3

Dombrowski v. Pfister,
    380 U.S. 479, 85 S. Ct. 1116 (1965)............................................................9

Elrod v. Burns,
    427 U.S. 347, 96 S. Ct. 2673 (1976)............................................................8

Erznoznik v. City of Jacksonville,
    422 U.S. 205, 95 S. Ct. 2268 (1975)............................................................7

Evergreen Ass'n, Inc. v. City of New York,
    740 F.3d 233 (2d Cir. 2014).........................................................................8

For the People Theatre of N.Y., Inc. v. City of New York,
    29 N.Y.3d 340, 57 N.Y.S.3d 69 (2017) .....................................................18

For the People Theatres of N.Y., Inc. v. City of New York,
    1 Misc.3d 394, 768 N.Y.S.2d 783 (Sup. Ct. N.Y. Co. 2003) .....................16

For the People Theatres of N.Y., Inc. v. City of New York,
    131 A.D.3d 279, 14 N.Y.S.3d 338 (1st Dept. 2015)...................................18

For the People Theatres of N.Y., Inc. v. City of New York,
    20 A.D.3d 1, 793 N.Y.S.2d 356 (1st Dept. 2005).......................................................17

For the People Theatres of N.Y., Inc. v. City of New York,
    38 Misc.3d 663, 954 N.Y.S.2d 801 (Sup. Ct. N.Y. Co. 2012) ...................................17

For the People Theatres of N.Y., Inc. v. City of New York,
    6 N.Y.3d 63, 810 N.Y.S.2d 381 (2005) ......................................................................17

Hickerson v. City of New York,
    997 F. Supp. 418 (S.D.N.Y. 1998) .............................................................................15

Hickerson v. City of New York,
    146 F.3d 99 (2d Cir. 1998).........................................................................................15

Joseph Burstyn, Inc. v. Wilson,
    343 U.S. 495, 72 S. Ct. 777 (1952).............................................................................7

McMinn v. Town of Oyster Bay,
    66 N.Y.2d 544, 498 N.Y.S.2d 128 (1985) ..................................................................12

Miller v. California,
    413 U.S. 15, 93 S. Ct. 2607 (1973).............................................................................7

New York Times Co. v. United States,
    403 U.S. 713, 91 S. Ct. 2140 (1971)...........................................................................8

North Street Book Shoppe, Inc. v. Village of Endicott,
    582 F. Supp. 1428 (N.D.N.Y. 1984)...........................................................................10

Petereit v. S.B. Thomas, Inc.,
    63 F.3d 1169 (2d Cir. 1995)........................................................................................10

Reuters Ltd. v. United Press Intern., Inc.,
    903 F.2d 904 (2d Cir. 1990)........................................................................................10

Smith v. California,
    361 U.S. 147, 80 S. Ct. 215 (1959).............................................................................9

Stringfellow's of New York, Ltd. v. City of New York,
    91 N.Y.2d 382, 671 N.Y.S.2d 406 (1998) .............................................................15, 19

Town of Huntington v. Sudano,
    42 A.D.2d 791, 346 N.Y.S.2d 582 (2d Dept. 1973) ...................................................15

Town of Huntington v. Sudano,
    35 N.Y.2d 796, 362 N.Y.S.2d 459 (1974) ..................................................................15

**Introduction**

The Plaintiffs are 11 small book and video stores ("bookstores") in Manhattan, Queens, and Brooklyn, which provide constitutionally protected adult-oriented information to the public. This brief is submitted in support of their motions for partial summary judgment declaring unconstitutional and enjoining enforcement of portions of Text Amendment N 010508 ZRY to the Zoning Resolution of the City of New York (the "2001 Amendments"), which was enacted back in 2001—yet never enforced in more than 20 years.

The 2001 Amendments severely restrict where and how businesses offering adult entertainment to consenting adults on private property can operate. They directly impact bookstores as well as eating and drinking establishments featuring live adult entertainment ("Clubs"). Most legal issues relating to the different types of businesses are identical. As a consequence, to avoid unnecessary duplication and for the convenience of the Court, it was agreed that the Bookstore Plaintiffs in this action would join in the Club Plaintiffs' brief filed in the related proceedings[1] in support of their motions for partial summary judgment

---

[1] 725 Eatery Corp. v. City of New York, Docket No. 1:02-cv-4431-LJL ("Action No. 1"); 59 Murray Enterprises, Inc. v. City of New York, Docket No. 1:02-cv-4432-LJL ("Action No. 2"); and Club at 60th Street v. City of New York, Docket No. 1:02-cv-8333-LJL ("Action No. 3"). Given the related nature of the four cases, and their common disposition thus far in the litigation, filings on common issues have been made in a single document jointly on behalf of all parties on the same side of the case (ECF No. 107). A Joint Request and Stipulations Regarding the Taking of Judicial Notice ("2022 JNR") was filed in all four related cases on May 9, 2022 (ECF No. 121). A Statement of Stipulated Facts was filed in all cases on January 27, 2021 (ECF No. 99-1). A Joint Statement of Facts ("JSF")

declaring unconstitutional and enjoining enforcement of the (1) mandatory termination, and (b) permitting and vesting provisions of the 2001 Amendments. See ECF Nos. 109, 115, 116. This brief only addresses issues specific to bookstores.[2]

### Facts Related Specifically to Bookstores

In 1995, the City enacted zoning restrictions specifically for "adult establishments." (JSF ¶ 1).  The 1995 Amendments defined an "adult bookstore" as

> a bookstore which has as a "substantial portion" of its stock-in-trade any one or more of the following: (1) books, magazines, periodicals or other printed matter which are characterized by an emphasis upon the depiction or description of "specified sexual activities" or "specified anatomical areas"; or, (2) photographs, films, motion pictures, video cassettes, slides or other visual representations which are characterized by an emphasis upon the depiction or description of "specified sexual activities" or "specified anatomical areas." (JSF ¶ 6).

In 1998, while a vagueness challenge to the 1995 Amendments was pending in this Court, the City issued Operations Policy and Procedure Notice ("OPPN") # 4/98 (2022 JNR Ex. 11), which explained that an establishment would be deemed an adult bookstore by virtue of it having a "substantial portion" of its stock in adult materials if "at least 40

_____

was filed in all cases on May 23, 2022 (ECF No. 122-1). A Supplemental Joint Statement of Facts ("SJSF") was filed on September 8, 2022 (ECF No. 127-1). References to "PJA" relate to the Plaintiffs' 17-volume Joint Appendix filed in all cases on November 21, 2018 (ECF Nos. 29-45).

[2] The Bookstore Plaintiffs believe that all Plaintiffs have a mutuality of interest and fully support the arguments made by the Club Plaintiffs in the related proceedings. Nothing in this brief is intended to dispute or undermine any of the Club Plaintiffs' claims.

percent of the book store's total stock accessible or available ('accessible') for sale or rent to customers is comprised of adult materials," or "if 40 percent of the establishment's floor area and cellar space accessible to customers contains stock in adult materials." (JSF ¶ 10). This became known as the "60/40 Rule." (JSF ¶ 10).

After the courts vacated the injunctions and stays, and allowed the 1995 Amendments to become enforceable in 1998, several of the regulated businesses permanently closed. (JSF ¶ 14). Several other businesses attempted to comply with the 1995 Amendments and 60/40 Rule by reducing their floor space and stock-in-trade devoted to the sale or presentation of adult materials or entertainment, and by toning down the exterior signage of their business. (JSF ¶ 15). The City urged that several businesses which modified their floor space and stock to comply with the 60/40 Rule had engaged in "sham" compliance. (JSF ¶ 17). However, the New York Court of Appeals held that the 1995 Amendments should be strictly construed such that bookstores presenting adult entertainment or materials in less than 40% of their public floor space were not subject to the 1995 Amendments. See City of New York v. Les Hommes, 94 N.Y.2d 267, 702 N.Y.S.2d 576 (1999). (JSF ¶ 18).

On October 31, 2001, the City adopted amendments to its Zoning Resolution which, Plaintiffs assert, significantly modified 60/40 compliance for adult bookstores. (JSF ¶ 19). The 2001 Amendments defined "Adult Establishment" (in ZR § 12-10) to include any commercial "adult book store," defined as including any bookstore

> that offers "printed or visual material" for sale or rent to customers where a "substantial portion" of its stock-in-trade of "printed or visual material" consists of "adult printed or visual material," defined as "printed or visual material" characterized by an emphasis upon the depiction or description of "specified sexual activities" or "specified anatomical areas." (JSF ¶ 26).

For purposes of a 60/40 analysis, the 2001 Amendments enumerated factors to be used in determining "whether a 'substantial portion' [40% or more] of a book store's stock-in-trade of 'printed or visual' material consists of 'adult printed or visual material.'" (JSF ¶ 27). The factors to be considered include:

> (i)   The amount of stock of "adult printed or visual material" ("adult material") accessible to customers as compared to the total stock of "printed or visual material" accessible to customers in the establishment; and
>
> (ii)   the amount of floor area and cellar space accessible to customers containing stock of "adult printed or visual material"; and
>
> (iii)   the amount of floor area and cellar space accessible to customers containing stock of "adult printed or visual material" as compared to the amount of floor area and cellar space accessible to customers containing "printed or visual material" which is not "adult printed or visual material" ("non-adult material"). (JSF ¶ 27).

The City further amended the definition of an adult bookstore to provide that non-adult material [regardless of the percentage] would not be considered "stock-in-trade" – and thus excluded from a 60/40 analysis as a "sham" – if the "store has one or more of the following features":

    (aa)   an interior configuration and layout which requires customers to pass through an area with adult material in order to access an area with non-adult material;

    (bb)   one or more individual enclosures where adult movies or live performances are available for viewing by customers;

    (cc)   a method of operation which requires customer transactions with respect to non-adult material to be made in an area of the store which includes adult material;

    (dd)   a method of operation under which non-adult material is offered for sale only and "adult printed or visual material" is offered for sale or rental;

    (ee)   a greater number of different titles of adult material than the number of different titles of non-adult material;

    (ff)   a method of operation which excludes or restricts minors from the store as a whole or from any section of the store with non-adult material;

    (gg)   a sign that advertises the availability of adult material which is disproportionate in size relative to a sign that advertises the availability of non-adult material;

    (hh)   a window display in which the number of products or area of display of adult material is disproportionate in size relative to the number of products or area of display of non-adult material;

(ii)   other features relating to configuration and layout or method of operation, as set forth in rules adopted by the Commissioner of Buildings, which the Commissioner has determined render the sale or rental of adult material a substantial purpose of the business conducted in such store. (JSF ¶ 27).

Under the 2001 Amendments, a bookstore that devotes less than 40% of its stock and floor space to adult material, but has private video booths or any of the other features enumerated above, is an adult bookstore. (JSF ¶ 28).

It is uncontroverted that (1) the Bookstore Plaintiffs presently operate businesses defined by the 2001 Amendments as "adult" but which would not be deemed adult establishments but for the enactment of the 2001 Amendments (JSF ¶ 29); and (2) all of the Bookstore Plaintiffs regularly present adult materials in less than 40% of their relevant floorspace, and less than 40% of their stock consists of adult materials. (JSF ¶ 30).

Prior to the 1995 Amendments, the City's Department of City Planning identified 86 adult bookstores (including peep shows and video stores) citywide. (JSF ¶ 177). Today, there are just 24 known 60/40 bookstores citywide: 14 in Manhattan, 2 in the Bronx, 5 in Brooklyn, and 3 in Queens. (2022 JNR-1594; JSF ¶ 174). There are only two known 100% adult bookstores in the entire City. One is in Manhattan and does not have any private viewing booths. (JSF ¶ 180). The only other 100% adult bookstore is out on Staten Island and has booths. (JSF ¶ 180). Thus, there is just a single 100% adult bookstore with booths in the entire City. If the 2001 Amendments are enforced, there are no known 60/40

6

bookstores could continue to exhibit adult videos in private booths at their current locations. (JSF ¶ 184).

On September 30, 2019, Judge William H. Pauley granted the Plaintiffs' motion for a preliminary injunction in this action. (JSF ¶ 37; ECF No. 70). <u>725 Eatery Corp. v. City of New York</u>, 408 F.Supp.3d 424 (S.D.N.Y. 2019).

### I. The Bookstore Plaintiffs and Public Will Suffer Irreparable Injury and the Plaintiffs have No Adequate Remedies at Law to Address their Inequitable Treatment

The Bookstore Plaintiffs fully satisfy the considerations for declaratory relief and a permanent injunction. It is well settled that "motion pictures are a significant medium for the communication of ideas." <u>Joseph Burstyn, Inc. v. Wilson</u>, 343 U.S. 495, 501, 72 S. Ct. 777, 780 (1952). There is no contention that this brand of information is legally obscene under prevailing constitutional standards. <u>See</u> <u>Miller v. California</u>, 413 U.S. 15, 93 S. Ct. 2607 (1973). Thus, it is fully protected by the First and Fourteenth Amendments to the United States Constitution. <u>Erznoznik v. City of Jacksonville</u>, 422 U.S. 205, 208, 95 S. Ct. 2268, 2272 (1975).

Private viewing booths "allow consenting adults to view a wide range of sexually explicit material within the privacy and sanctity of a safe space. No one knows what selection a person is viewing. Therefore, booths allow patrons to watch films that some might believe are deviant, aberrant, queer, perverse or unorthodox, within a judgment-free zone." (PJA.1620; ECF No. 42-66; Zazzali Decl., dated November 13, 2018, ¶ 11). The impairment or loss of free speech "freedoms for even minimal periods of time,

unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373, 96 S. Ct. 2673, 2690 (1976), citing New York Times Co. v. United States, 403 U.S. 713, 91 S. Ct. 2140 (1971). See also Bery v. City of New York, 97 F.3d 689, 693 (2d Cir. 1996).

The 2001 Resolution, which bars bookstores from exhibiting films in private viewing booths and restricts the variety of titles a bookstore can offer to the public, directly limits speech. And, as such, the "irreparable nature of the harm may be presumed." Evergreen Ass'n, Inc. v. City of New York, 740 F.3d 233, 245 (2d Cir. 2014). See also 414 Theater Corp. v. Murphy, 499 F.2d 1155, 1160 (2d Cir. 1974) (removing viewing booths "involves a deprivation of" the bookstore owner's and "the public's first amendment rights to show and view films, and in itself constitutes irreparable injury justifying injunctive relief, because there is no means to make up for the irretrievable loss of that which would have been expressed").

Criminal charges -- punishable by a year in jail -- may be filed against bookstore owners perceived to be in violation of the 2001 Resolution. Section 11-61 of the Zoning Resolution provides, in pertinent part, that the owner or operator of any place in violation of a provision of the Zoning Resolution "shall be guilty of a misdemeanor." Section 55.10(2)(b) of New York's Penal Law states that any offense defined outside this chapter which is declared by law to be a misdemeanor "shall be deemed a class A misdemeanor." P.L. § 70.15(1) then authorizes a sentence of imprisonment of up to one year for a class A misdemeanor. Thus, the operator of a bookstore is subject to conviction and imprisonment if minors are excluded from any non-adult areas, there are adult viewing booths, or the

bookstore has a greater variety of adult titles than non-adult titles. (2022 JNR at 63-65;

PJA.1627, 1631; ECF No. 42-73, 42-77; Zazzali Decl., dated November 13, 2018, ¶¶ 32.

45. 46).

Irreparable injury is established when one is forced to choose between foregoing

constitutional rights of free expression and facing criminal prosecution. See 754 Orange

Ave., Inc. v City of West Haven, Conn., 761 F.2d 105, 114 (2d Cir. 1985) ("lest there be

any doubt as to irreparability of harm were the present ordinances to be enforced to prevent

the coin-operated film machines from being utilized," the bookstore would "be required to

choose between continuing without a license in its business, thereby subjecting itself and

its employees to the threat of criminal and civil prosecutions, or removing the machines

from its premises"). Indeed, the threat of criminal penalties authorized by the Zoning

Resolution is sufficient to constitute irreparable injury because it potentially will have a

"chilling effect on free expression." See Dombrowski v. Pfister, 380 U.S. 479, 487, 85 S.

Ct. 1116, 1121 (1965).

Furthermore, requiring bookstores to self-censor can be as, if not more, pernicious

than direct governmental censorship. It may very well result in managers, rightly fearful of

civil and criminal sanctions, halting the exhibition or sale of any adult-oriented expression,

despite its constitutional protection. See, e.g., Smith v. California, 361 U.S. 147, 153, 80

S. Ct. 215, 218 (1959) (the specter of the application of severe sanctions will "tend to

restrict the public's access to forms of the printed word which the State could not

constitutionally suppress directly. The bookseller's self-censorship, compelled by the

State, could be a censorship affecting the whole public, hardly less virulent for being privately administered").

Even if the Bookstore Plaintiffs are not forced to close or relocate, irreparable harm exists if the businesses are compelled to alter the nature of their expression so as to comply with the 2001 Resolution. While some bookstores may come into compliance by removing their private viewing booths and altering the nature of their stock, such alternatives impose impermissible restrictions on free expression. North Street Book Shoppe, Inc. v. Village of Endicott, 582 F. Supp. 1428, 1432 (N.D.N.Y. 1984) (enforcement of an adult zoning ordinance enjoined where the municipality was instructing the bookstore to "curtail its lawful speech or relocate; each alternative constitutes a significant burden on lawful speech").

In addition, as developed in the compelling declarations of bookstore owners, if they are required to close their stores or aspects of the businesses, this will cause the bookstores to lay off longtime employees, break leases, forfeit customers, lose goodwill, and lose their livelihood. (PJA.1629, 1647; ECF No. 42-75, 76, 93; Zazzali Decl., dated November 13, 2018, ¶¶ 38-43; Knecht Decl., dated November 6, 2018, ¶¶ 10-12).  A "[m]ajor disruption of a business can be as harmful as its termination and thereby constitutes irreparable harm." Petereit v. S.B. Thomas, Inc., 63 F.3d 1169, 1186 (2d Cir. 1995). Moreover, loss of customers and goodwill can be irreparable harm.  Reuters Ltd. v. United Press Intern., Inc., 903 F.2d 904, 909 (2d Cir. 1990). Forcing the Plaintiffs to close, or censor the nature of their expression, will have dire and irreparable implications.

## II. Any Balancing of the Hardships Weighs Overpoweringly in Favor of Maintaining the Status Quo of Free Expression that has Existed for More than 20 Years, and the Public Interest Will Not be Disserved by a Permanent Injunction

A balancing of the equities tilts heavily in favor of allowing tax paying businesses, which employ many people, to continue to remain open and dispense constitutionally protected expression to consenting adults. It is actually hard to imagine a case where a balancing of the hardships and equities strained more heavily to one side. In granting preliminary injunctive relief to maintain the status quo that – at that point – had existed for nearly two decades, Judge Pauley found that "Plaintiffs are more likely than not to succeed on the merits of their First Amendment free speech claims." 408 F.Supp.3d at 459. Judge Pauley also noted:

> The adult-use regulations that are the subject of these now-revived constitutional challenges are a throwback to a bygone era. The City's landscape has transformed dramatically since Defendants last studied the secondary effects of adult establishments twenty-five years ago. As Proust might say, the "reality that [the City] had known no longer existed," and "houses, roads, [and] avenues are as fugitive, alas, as the years." Marcel Proust, Swann's Way, in Remembrance of Things Past (C.K. Scott Moncrieff trans., 1922) (1913). 408 F.Supp.3d at 470.

The Court seemed to acknowledge the senselessness of enforcing, for the very first time, a stale and unnecessary zoning amendment that was enacted in the waning days of the Giuliani administration – when New York City was a very different place. That is particularly true when the entire predicate for the zoning amendment was based exclusively

on studies conducted during the last century (1994).[3] Moreover, a subsequent change in conditions may invalidate an ordinance that was validly enacted. As recognized by the Supreme Court, "a police regulation, although valid when made, may become, by reason of later events, arbitrary and confiscatory in operation." Abie State Bank v. Weaver, 282 U.S. 765, 772, 51 S. Ct. 252, 255 (1931).[4]

Here, a balancing of the equities completely topples over when due consideration is given to the fact that enforcement of the 2001 Amendments will jeopardize free expression in what is supposed to be the freest city, in the freest nation in the world. This is particularly true because every existing bookstore in Manhattan, Queens, the Bronx, and Brooklyn with private viewing booths will be forced to close their booths and deprive patrons of secure, anonymous places to view erotic expression. But, silencing expression in private viewing booths is not the sole grievous harm to bookstore owners and the public.

---

[3] It is uncontroverted that in adopting the 2001 Amendments, the City did not undertake any new study of purported negative secondary effects alleged to be attributable to 60/40 Businesses, and made no findings of the extent to which purported negative secondary effects attributable to adult establishments in the City's 1994 study and 1995 report were eliminated by the 1995 Amendments. (JSF ¶ 34).

[4] In New York, zoning ordinances are generally reviewed to see if they are a valid exercise of a municipality's police power to advance the public health, safety, and welfare. See, e.g., McMinn v. Town of Oyster Bay, 66 N.Y.2d 544, 549, 498 N.Y.S.2d 128 (1985).

The 2001 Amendments modified the definition of adult bookstores to virtually eviscerate the original 60/40 Rule, which focused exclusively on relative floorspace and stock. Instead, all of a bookstore's non-adult stock will be considered a sham, completely discounted, and removed from the 60/40 calculus if the store has any one of eight different "features" that have nothing to do with zoning considerations. (JSF ¶ 172) ("Bookstores without private video booths may remain at locations where adult establishments are prohibited, subject to the eight additional factors included in the City's 60/40 requirements for bookstores").

A video store's large selection of top-selling non-adult Hollywood or Bollywood DVDs would be dismissed as a sham – subjecting the management to closure and criminal charges -- if patrons had to pass by an adult DVD to access non-adult films, or adult DVDs are available for rental whereas non-adult DVDs are only available for sale. See Z.R. § 12-10; JSF ¶ 27. Similarly, under the 2001 Amendments, a bookstore cannot have "a method of operation which requires customer transactions with respect to" non-adult material "to be made in an area of the store which includes" adult material. Id. Thus, if 99% of a bookstore's stock (thousands of copies) is comprised exclusively of tomes of Shakespearian plays, all of that material will be excluded from any consideration of the store's non-adult stock for purposes of a 60/40 analysis if there is a single sexually explicit film offered for sale near the cash register.

13

Perhaps most disconcerting is the zoning amendment's consideration of the actual titles of books and DVDs at a bookstore. If the 2001 Amendments are allowed to be enforced, bookstore owners will be required to censor their selection of non-adult and adult literature and films. Building inspectors will be charged with reviewing the actual titles of books to make sure that the bookstore does not have a "greater number of different titles" of adult material "than the number of different titles" of non-adult material. (JSF ¶ 27). Therefore, a bookstore can be closed – and the manager incarcerated for up to one year – if they stock 100 copies of the book currently topping The New York Times Best Sellers list – or even The Bible -- as well as just two different books of erotic photography. Such a content-based limitation chills expression and violates one of the most cardinal policies of free expression.

The 2001 Resolution also gives the Building Commissioner unbridled discretion to adopt rules to determine the "substantial purpose" of a bookstore when considering compliance with the Zoning Resolution. (JSF ¶ 27). However, the "dissemination of material protected by the first amendment cannot be left to the unguided discretion of a city commissioner." 414 Theater Corp., 499 F.2d at 1159, citing Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 83 S. Ct. 631 (1962).

In weighing the competing interests, we note that zoning laws are "in derogation of common-law rights." 440 East 102nd St. Corp. v. Murdock, 285 N.Y. 298, 304, 34 N.E.2d 329, 331 (1941). As a result, "each and every of the parts" of restrictive zoning laws "must be given a strict construction." Id. Moreover, zoning should address legitimate land use

concerns -- <u>not</u> the operation of businesses. <u>See</u>, <u>e.g.</u>, <u>Town of Huntington v. Sudano</u>, 42 A.D.2d 791, 792, 346 N.Y.S.2d 582 (2d Dept. 1973), <u>aff'd</u>, 35 N.Y.2d 796, 362 N.Y.S.2d 459 (1974).[5]  The distinction between regulation of land and operating of businesses is especially significant when free expression is implicated. Consideration of the actual titles of books and their variety – as well as the placement of a cash register and whether or not films are just sold or rented – has absolutely no relevance to zoning, or the prevention of any harm to neighboring properties or the community.

The City will not be prejudiced by maintaining the status quo that has existed since 1998 – when the Courts upheld the constitutionality of the 1995 Amendments. Significantly, the bookstores are still subject to the rigorous regulations of the 1995 Amendments, which were upheld by the State's highest court and approved by the federal courts. <u>Stringfellow's of New York, Ltd. v. City of New York</u>, 91 N.Y.2d 382, 671 N.Y.S.2d 406 (1998); <u>Hickerson v. City of New York</u>, 997 F. Supp. 418 (S.D.N.Y. 1998), <u>aff'd</u>, 146 F.3d 99 (2d Cir. 1998).

---

[5] In <u>Sudano</u>, the Court found that a municipality could restrict the number of dogs at a kennel as a reasonable safeguard on the use of the property and to protect the neighboring properties. However, the Zoning Board could not impose a limitation on the use of the property for training guide dogs for the blind. Such a restriction – on the types of dogs that could be trained at a commercial kennel –"does not bear on the use of the land, but rather on the operation of the business and hence is impermissible." 42 A.D.2d at 792, 346 N.Y.S.2d at 584.

### III.     All of the Bookstore Plaintiffs Seek Injunctive Relief

It is uncontroverted that the sites presently operated by three Bookstore Plaintiffs were all being operated as 60/40 Businesses prior to the adoption of the 2001 Amendments: 336 LLC, d/b/a "The Erotica" (located at 336 Eighth Avenue in Manhattan), 725 Video Outlet Inc. (located at 725 Sixth Avenue in Manhattan), and 557 Entertainment, Inc. (located at 557 Eighth Avenue in Manhattan). (JSF ¶ 38). The effect of the 2001 Amendments was to immediately render those businesses "non-conforming uses." It is further uncontroverted that, with the exception of any periods of discontinuance of less than two years (including COVID closures), those addresses have continuously operated as 60/40 Businesses since prior to the adoption of the 2001 Amendments. (JSF ¶ 39).

The other eight Bookstore Plaintiffs began operating 60/40 businesses on sites after the 2001 Amendments were enacted but while their enforcement was stayed. Most of those businesses opened at a time when a judicial determination had been made striking down the 2001 Amendments as unconstitutional. For example, in 2003, Justice Louis B. York, of the New York Supreme Court, found that the 2001 Amendments "are facially unconstitutional and that they control the content of the establishments they seek to regulate." For the People Theatres of N.Y., Inc. v. City of New York, 1 Misc.3d 394, 396, 768 N.Y.S.2d 783 (Sup. Ct. N.Y. Co. 2003).

Justice York's publicized ruling,[6] striking down the 2001 Amendments, was still on the books when Plaintiffs Video Sales & Distribution Inc., DCD Exclusive Video Inc., and Vishara Video Inc., began operating at their current locations in at least 2003-2005. (JSF ¶¶ 61a, 64a, 68a). That judgment remained the law until April 12, 2005, when it was reversed by the Appellate Division. For the People Theatres of N.Y., Inc. v. City of New York, 20 A.D.3d 1, 22, 793 N.Y.S.2d 356 (1st Dept. 2005). A few months later the Court of Appeals concluded that a question of fact existed which required further proceedings, and remanded the case back to Justice York. For the People Theatres of N.Y., Inc. v. City of New York, 6 N.Y.3d 63, 67, 810 N.Y.S.2d 381 (2005).[7]

On August 30, 2012, Justice York again held that, on their face, the 2001 Amendments are a "violation of free speech provisions of the U.S. and State Constitutions." For the People Theatres of N.Y., Inc. v. City of New York, 38 Misc.3d 663, 675, 954 N.Y.S.2d 801 (Sup. Ct. N.Y. Co. 2012). The Appellate Division agreed that the

---

[6] See, e.g., Susan Saulny, Judge Rules Against Giuliani Plan on Sex Shops, N.Y. Times, Sept. 11, 2003, at B2; Dareh Gregorian, N.Y. City is Porn Again, N.Y. Post, Sept. 11, 2003, at 21 ("a Manhattan judge has thrown out new city zoning regulations that would have shuttered almost all of the city's remaining strip clubs, peep shows and adult movie theaters, video and book stores").

[7] Chief Judge Judith Kaye, joined by Judges George Bundy Smith and Carmen Beauchamp Ciparick dissented and noted that the plaintiffs in that action "produced substantial evidence that the 60/40 businesses are functionally different from the pre-1995 businesses and that the 60/40 businesses do not produce negative secondary effects. ... [and] many of the community representatives in areas with a heavy presence of 60/40 businesses who had supported the 1995 resolution now opposed the 2001 amendment." 6 N.Y.3d at 87, 810 N.Y.S.2d at 396 (Kaye, C.J., dissenting).

17

amendments were an "unconstitutional violation of the First Amendment" and affirmed the permanent injunction. For the People Theatres of N.Y., Inc. v. City of New York, 131 A.D.3d 279, 294, 14 N.Y.S.3d 338 (1st Dept. 2015). That was the state of the law when Plaintiffs Chelsea 7 Corp, Rainbow Station 7 Inc., Video Lovers Inc., and Vishans Video, Inc. opened (JSF ¶¶ 60a, 62a, 63a, 65a), and remained the law until June 6, 2017, when the New York Court of Appeals reversed. For the People Theatre of N.Y., Inc. v. City of New York, 29 N.Y.3d 340, 363, 57 N.Y.S.3d 69 (2017).

All of the Bookstore Plaintiffs are specifically configured to conform to the 60/40 Rule. (JSF ¶¶ 59c, 60c, 61c, 62c, 63c, 64c, 65c, 66c, 67c, 68c, 69c). All of the Bookstore Plaintiffs desire to own and manage a business which presents adult expression and material to the public through private video booths and other means. (JSF ¶¶ 59e, 60e, 61e, 62e, 63e, 64e, 65e, 66f, 67e, 68e, 69f). And, it is uncontroverted that if the 2001 Amendments are enforced, they will not be able to continue their present business at their current locations, and they will be forced to seek another location in order to offer adult expression to the public through private video booths. (JSF ¶¶ 59f, 60f, 61f, 62f, 63f, 64f, 65f, 66g, 67f, 68f, 69g). As a consequence, all of the Bookstore Plaintiffs seek injunctive relief.

### IV. 60/40 Bookstores Do Not Cause the Types of Problems Which the City Attributed to the 100% Adult Establishments that Formed the Basis for the 1995 Amendments

It is uncontroverted that gaudy lighting and graphic signage were complaints of the proponents of the 1995 Amendments. (JSF ¶ 32). It is also uncontroverted that, following the enactment of the signage restrictions in the 1995 Amendments, and the courts' upholding of those amendments, the vast majority, if not all, of the businesses which switched to the 60/40 model, also made changes in toning down their signage in compliance with the requirements of that ordinance. (JSF ¶ 31). Signage on currently existing 60/40 Businesses has not been a significant source of complaints. (JSF ¶ 33).

Efforts to "clean up" the Times Square area played a considerable role in the enactment of the 1995 Amendments. The Times Square Business Improvement District was an Intervenor in the litigation that eventually upheld the 1995 Amendments. See Stringfellow's, 91 N.Y.2d at 388, 671 N.Y.S.2d at 410 (1998). And, before enacting the 1995 Amendments, the City considered various studies including one "focused on the impact of adult uses on property values and the incidence of crime in the Times Square area, in the heart of Manhattan." 91 N.Y.2d at 397, 671 N.Y.S.2d at 414.

More recent statistics reveal that the Times Square studied back in 1994 is markedly different from the bustling tourist center today. The Times Square Alliance reported an approximate 80% decline in crime from 1995 to 2018. (JSF ¶ 205). And, according to crime statistics maintained by the New York City Police Department, by 2016, crime in the Midtown South precinct, which includes Times Square, had declined to less than 20% of

what it was in 1990. (JSF ¶ 204). Similarly, Plaintiffs claim that, based upon U.S. Census Bureau reports, the median household income in the Times Square census tract nearly tripled between 1990 and 2011. (JSF ¶ 206). These statistics are relevant because there are several 60/40 bookstores – including Plaintiffs Gotham Video Sales & Distribution Inc. (687 Eighth Avenue), Vishara Video, Inc. (781 Eighth Avenue), and Vishans Video, Inc. (797 Eighth Avenue) – in the Times Square area.

## Conclusion

One of the oldest, deepest and most conclusive attractions of a free society is the belief that throughout its system all forms of information, whatever its nature, will be accessible to everyone. The right to continued access to protected films or books affects all of us. There is considerable power in the concept that the societal interests are far greater where the public's constitutional right to read and see what it pleases is at stake.

A thick layer of dust formed long ago on the unused text of the 2001 Amendments. This "throwback to a bygone era" is wholly unnecessary today. And, it should not be enforced to suppress expression at existing businesses. This is particularly true where, as developed in the Club Plaintiffs' brief, the Zoning Resolution's unique adult business mandatory termination provisions are content-based, impermissibly discriminatory, and facially unconstitutional in violation of the Free Speech and Equal Protection guarantees of the First and Fourteenth Amendments. Furthermore, the City's various permitting and vesting provisions are facially unconstitutional.

For all these reasons, as well as those advanced and developed in the Club Plaintiffs' Memorandum of Law, we respectfully request that the Plaintiffs' primary motion, seeking facial invalidation of the City's mandatory termination provisions should be granted. In the alternative, the Bookstore Plaintiffs ask the Court to grant the motion to permanently enjoin enforcement of the City's mandatory termination provisions because the City's provisions for vesting and permitting of adult businesses deny them a reasonable opportunity for relocating and reopening an adult business. We also ask that the Court grant such other and further relief as is justified, including but not limited to a hearing and oral argument.

New York, New York
September 16, 2022

Respectfully submitted,

/s/ Erica T. Dubno
Erica T. Dubno, Esq.
Fahringer & Dubno
43 West 43rd Street, Suite 261
New York, New York 10036
(212) 319-5351
(212) 319-6657 (fax)
erica.dubno@fahringerlaw.com

Counsel for the Bookstore Plaintiffs